## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KALEB ROBERT FAJARDO, | § | |
| TDCJ No. 02219103, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL NO. SA-21-CA-0280-XR |
| | § | |
| BOBBY LUMPKIN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Petitioner Kaleb Robert Fajardo's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent Bobby Lumpkin's Answer (ECF No. 9), and Petitioner's Reply (ECF No. 10) thereto. Petitioner challenges the constitutionality of his August 2018 state court conviction for intoxication manslaughter, arguing the admission of certain evidence at trial violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

### I. Background

In December 2016, Petitioner was charged by indictment with manslaughter and intoxication manslaughter for driving his truck at a high rate of speed while intoxicated into the vehicle driven by Sylvanna Sandoval, killing her. (ECF No. 8-2 at 31). A jury subsequently acquitted Petitioner of manslaughter but convicted him of intoxication manslaughter and

sentenced him to twelve years of imprisonment.  *State v. Fajardo*, No. 2016CR11118 (227th Dist. Ct., Bexar Cnty., Tex. Aug. 29, 2018); (ECF No. 8-2 at 187, 213-14).

On direct appeal, Petitioner argued the trial court erred in admitting incriminating statements he made to investigating officers at the crash scene in violation of his Fifth and Sixth Amendment rights under *Miranda*.  The Texas Fourth Court of Appeals disagreed and affirmed Petitioner's conviction, finding Petitioner's Fifth and Sixth Amendment rights had not yet attached because Petitioner was not in custody when he made the statements during the preliminary investigation.  *Fajardo v. State*, No. 04-18-00698-CR, 2019 WL 7196597 (Tex. App.—San Antonio, Dec. 27, 2019, pet. ref'd); (ECF No. 8-17).  Petitioner appealed this decision to the Texas Court of Criminal Appeals, but his petition for discretionary review (PDR) was refused on March 25, 2020.  *Fajardo v. State*, No. PD-0125-20 (Tex. Crim. App.); (ECF Nos. 8-21 through 8-23).  Petitioner did not file an application for state habeas corpus relief.[1]

Instead, Petitioner initiated the instant proceedings by filing a petition for federal habeas corpus relief.  (ECF No. 1).  In the petition, Petitioner argues that the state courts erred in holding that he was not in custody for *Miranda* purposes when law enforcement denied his request for legal counsel and continued their questioning.  In his answer, Respondent argues that federal habeas relief is precluded under the AEDPA's deferential standard because the state court's adjudication of this allegation was reasonable.  (ECF No. 9).

## II.  Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA.  28 U.S.C.A. § 2254.  Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was

---

[1]     *See* https://search.bexar.org, search for "Fajardo, Kaleb" last visited December 7, 2021.

contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

3

### III. <u>Merits Analysis</u>

The question in this case is whether Petitioner was in custody and therefore entitled to *Miranda* warnings prior to being questioned further by police.   Petitioner contends his *Miranda* rights were violated when police failed to honor his request for counsel and continued to question him about the quantity and type of alcohol he had consumed.   According to Petitioner, a reasonable person in his position—where there is ample probable cause for an arrest—would believe they were in custody and not free to leave.

Petitioner's allegation was rejected by the state appellate court on direct appeal and again by the Texas Court of Criminal Appeals when it refused Petitioner's PDR.  As discussed below, Petitioner fails to show that either court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record.

#### A.    Relevant Facts

The relevant facts surrounding Petitioner's admissions to police were accurately summarized by the Fourth Court of Appeals during Petitioner's direct appeal proceeding:

> At about 11:50 pm, [Petitioner] drove his truck at approximately 70 miles per hour in a 30 miles per hour zone and collided with Sylvanna Sandoval's van when she turned left in front of him.  Emergency personnel responded quickly. They saw the severely damaged vehicles with Sylvanna Sandoval unconscious in her van and [Petitioner] sitting or standing at a bus stop near the curb.  Witnesses identified [Petitioner] as being involved.
>
> Officer Tudor was the first officer to speak with [Petitioner].  At that time, Officer Tudor was responsible for coordinating the scene, which included identifying parties involved in the crash and witnesses.  He asked [Petitioner] for his name and date of birth, which [Petitioner] could not accurately answer. Officer Tudor asked [Petitioner] whether he had been drinking, and [Petitioner] said that he had had a few drinks.  Officer Tudor observed that [Petitioner] smelled like alcohol, had watery and bloodshot eyes, and swayed while he stood. Based on his training, experience, and observations, Officer Tudor suspected that [Petitioner] was intoxicated, and he called for a DWI team to investigate.

Officer Lopez conducted the DWI investigation and was the next to speak to [Petitioner].  Officer Lopez asked [Petitioner] if he knew what had happened.  [Petitioner] was, in turns, distracted and upset, then slurring and swaying.  When asked about the truck that struck Sandoval's van, [Petitioner] acknowledged that it was his and agreed that he drove it.  When Officer Lopez asked [Petitioner] how much he drank before he drove, [Petitioner] said that he had had four drinks.  When asked about the type of drinks, [Petitioner] answered, "Sir, I cannot answer any questions without my lawyer helping me."

Officer Lopez informed [Petitioner] that he was not under arrest, to which [Petitioner] replied, "I'm not saying I am, Sir, because I don't deserve to be."  Officer Lopez reiterated his question about the drinks, whether they were drinks or shots.  [Petitioner] responded that they were "somewhere between drinks and shots."  Officer Lopez asked when [Petitioner] drank, and [Petitioner] struggled to answer.  Officer Lopez told him, "That's fine, they're just questions.  You can say you don't know."

A forensic blood test showed [Petitioner]'s blood alcohol concentration to be .19 percent.

Ms. Sandoval died at the hospital from injuries she sustained in the crash.  [Petitioner] was charged with Intoxication Manslaughter, and a jury convicted him.

*Fajardo v. State*, 2019 WL 7196597, at *1; (ECF No. 8-17 at 1-2).

## B.    Reviewing Claims Under *Miranda*

It has long been established that the Fifth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a State agent.  *Edwards v. Arizona*, 451 U.S. 477, 484-86 (1981); *Miranda*, 384 U.S. at 474 (holding that once a defendant asserts his right to counsel during a custodial interrogation the interview "must cease until an attorney is present.").  When an accused invokes his right to counsel, any statements obtained during subsequent police-initiated custodial questioning regarding the charge at issue are inadmissible.  *Edwards*, 451 U.S. at 484 (finding that a defendant does not waive his Fifth Amendment rights simply by responding to further police-initiated custodial interrogation); *see also Montejo v. Louisiana*, 556 U.S. 778 (2009) (holding the same in the context of a Sixth Amendment violation).

5

However, police officers are not required to issue *Miranda* warnings to every person they question. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). Nor is the requirement of warnings to be imposed simply because the person being questioned "is one whom the police suspect." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quoting *Mathiason*, 429 U.S. at 495). Rather, *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." *Mathiason*, 429 U.S. at 495. A suspect is "in custody" for purposes of *Miranda* "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988) (en banc) (quoting *Miranda*, 384 U.S. at 479).

Petitioner was not formally arrested at the time he was questioned by police; as such, the only relevant inquiry "is how a reasonable man in [Petitioner]'s position would have understood his situation." *Stansbury v. California*, 511 U.S. 318, 324 (1994); *United States v. Courtney*, 463 F.3d 333, 337 (5th Cir. 2006). This reasonable-person standard "is an objective inquiry" that depends on the "totality of circumstances." *J.D.B. v. North Carolina*, 564 U.S. 261, 131 (2011); *United States v. Cavazos*, 668 F.3d 190, 193 (5th Cir. 2012) (quoting *Beheler*, 463 U.S. at 1125). To aid in this custody inquiry, the Fifth Circuit has identified several relevant factors. *United States v. Nelson*, 990 F.3d 947, 955 (5th Cir. 2021). These factors include: (1) the length of the questioning; (2) the location of the questioning; (3) the accusatory, or non-accusatory nature of the questioning; (4) the amount of restraint on the individual's physical movement; and (5) statements made by officers regarding the individual's freedom to move or leave. *Id*. (citing *United States v. Wright*, 777 F.3d 769, 775 (5th Cir. 2015)). No one factor is determinative. *Wright*, 777 F.3d at 775.

C.     **Application of the *Miranda* Standard**

Petitioner's *Miranda* allegation was rejected during his direct appeal proceedings by both the intermediate court of appeals and the Texas Court of Criminal Appeals.  When reviewing a state court adjudication under AEDPA's deferential standard, however, this Court must look to the last reasoned state judgment that considered and rejected Petitioner's *Miranda* allegation.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).  Because the Texas Court of Criminal Appeals refused Petitioner's PDR without written order, this Court should "look through" the unexplained decision to the last related state-court decision providing particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision.  *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018); *Uranga v. Davis*, 82 F.3d 282, 287 n.33 (5th Cir. 2018).

In this case, the last reasoned state court decision was issued by the intermediate court of appeals.  *Fajardo*, 2019 WL 7196597, at *3; (ECF No. 8-17 at 5-6).  After setting forth the relevant standard for determining whether an individual is in custody for *Miranda* purposes, the court concluded that Petitioner's Fifth and Sixth Amendment rights had not yet attached when he gave the inculpatory statements to police:

> The record shows that [Petitioner] was not in custody for purposes of *Miranda* during the preliminary investigation at the crash scene: officers displayed relaxed demeanors, showed no force, made no commands, used no handcuffs, and asked basic investigatory questions without transporting [Petitioner].
>
> Specifically, when Officer Lopez approached [Petitioner] at the scene, [Petitioner] was not in custody.  He was not physically detained, and Officer Lopez, who exhibited a calm demeanor and conversational tone of voice, stood at least two feet from him.
>
> Before [Petitioner] was taken into custody, the officers were not required to provide [Petitioner] with *Miranda* warnings or an attorney, and they were not

required to stop asking questions.  Although [Petitioner] stated that he did not want to answer the preliminary questions without an attorney, because [Petitioner] was not in custody, Officer Lopez was not required to stop his investigation to accommodate [Petitioner]'s early invocation.  At this early stage of the police investigation, [Petitioner] was not in custody, and neither his Fifth nor Sixth Amendment rights had attached.

> We overrule [Petitioner]'s first sub-issue.

*Id*. (citations omitted).

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record.  A state appellate court's determination is entitled to great deference when, as was done in this case, the court conducted a thorough and thoughtful review of the evidence.  *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993).  Petitioner has not shown that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.

Moreover, this Court has independently reviewed the record of these proceedings and finds that Petitioner was not in custody for *Miranda* purposes when he was interviewed by Officer Lopez.  The record indicates Officer Lopez questioned Petitioner in a nearby parking lot for approximately fifteen to twenty minutes before administering several field sobriety tests, which Petitioner failed.  ECF No. 8-5 at 227 (indicating Officer Lopez arrived on the scene a little after midnight), 228-29 (Petitioner interviewed in empty parking lot near the accident); ECF No. 8-6 at 6 (showing that Officer Lopez concluded his interview and began the field sobriety tests around 12:23 a.m.).  During this questioning, Petitioner was not handcuffed or otherwise physically restrained—he answered Officer Lopez's questions while standing in front of the officer's vehicle.  ECF No. 8-5 at 228-30.  And as noted by the intermediate appellate court, the

8

demeanor of the officers involved was relaxed, they made no commands and showed no force, and asked only basis investigatory questions. *Fajardo*, 2019 WL 7196597, at *3.

These factors weigh against a finding that Petitioner was in custody at the time he was questioned. *See United States v. Ortiz*, 781 F.3d 221, 233 (5th Cir. 2015) (interview lasting between twenty to forty minutes in car did not weigh in favor of conclusion that suspect was in custody); *Id*. at 231 ("The fact that an interview takes place in a public location weighs against the conclusion that a suspect is in custody."); *Cavazos*, 668 F.3d at 194 (determining that handcuffing of suspect demonstrated that officers had "physical dominion" over him); *United States v. Chavira*, 614 F.3d 127, 133-34 (5th Cir. 2010) (emphasizing that the officers told the defendant that "they knew she was not telling the truth").

Further, prior to administering the field sobriety tests, Officer Lopez informed Petitioner that he was not under arrest at that time.  ECF No. 8-6 at 45; *see United States v. Collins*, 972 F.2d 1385, 1405 (5th Cir. 1992) (finding defendants were not in custody when they were told they were not under arrest and were free to leave).  While Petitioner makes much of the fact that he was not free to leave during this questioning, the Fifth Circuit has recognized that temporary detention, by itself, does not automatically rise to the level of custodial interrogation. *See Bengivenga*, 845 F.2d at 597-98.  In other words, a reasonable person in Petitioner's position would have understood that, as long as "everything checked out,"—i.e., he was found to have not been intoxicated—he would be able to leave shortly.  *Id*. at 600.  Thus, viewing the record and pleadings under the deferential standard that applies on federal habeas review, Petitioner has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief on his *Miranda* allegation.

### IV.  <u>Certificate of Appealability</u>

The Court must now determine whether to issue a certificate of appealability (COA).  *See* Rule 11(a) of the Rules Governing § 2254 Proceedings;  *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).  A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller–El,* 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument.  *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000).  For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief.  As such, a COA will not issue.

### V.  <u>Conclusion and Order</u>

After careful consideration, the Court concludes Petitioner has failed to establish that the state court's rejection of the aforementioned claim on the merits during his direct appeal proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during Petitioner's state trial and appellate proceedings.  As a result, Petitioner's federal habeas corpus petition does not warrant relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.      Federal habeas corpus relief is **DENIED** and Petitioner Kaleb Robert Fajardo's

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED**

**WITH PREJUDICE**;

2.      No Certificate of Appealability shall issue in this case; and

3.      All remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

SIGNED this 8th day of December, 2021.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE